The next case we have is People of the State of Illinois v. Travis Tucker. Mr. Burke. Thank you, Your Honor. May it please the Court, I'm Robert Burke with the Office of the State Appellate Defender. I represent the defendant, Travis Tucker. We're asking this Court to vacate his conviction, reverse the court order denying his motion to suppress the inculpatory statement, and remand this case for a new trial. The State has confessed error as to the substantive issue on denial of right to counsel on the motion to suppress. Thank you. So it seems the issue now is whether the evidence is harmless. Yes, Your Honor. The case law says that in this kind of situation it is rarer. Because this is such a vital constitutional right and because confessions are such powerful pieces of evidence. I liken it to, at the trial court level, there's a presumption of innocence and the State has to prove beyond a reasonable doubt. The defendant is guilty in order to overcome that presumption of innocence. Well, there's the same kind of presumption on appeal when it's a preserved constitutional issue such as this. There's a presumption that it's reversible error unless the State is able to show beyond a reasonable doubt that it was not error that contributed to the verdict. There was plenty of evidence here that the jury could have relied upon to acquit. I don't know that they would have, but I don't have to know that they would have. The mere fact that they could have prevents the State from meeting its burden. Was the video shown of the confession? I don't believe so, Your Honor. I took a look at my notes this morning and I don't see that it ever was. Detective Thomas related what was in the video. From his notes, from his police report? I don't believe that he had it in front of him while he was testifying, but he was certainly testifying in order to testify the same as what the video said. He was asked what was said during the videotaping. And it was that statement, the fact that you couldn't say we went up there by accident, we went up with guns, that gets to the heart of this. He's charged with murder during the course of felony and armed robbery. And the question is was it really an armed robbery? And I don't believe the State can overcome this burden in this case. Do you think it matters in this case whether he was charged by accountability or whether he was charged with the shooter? No, I don't. The only thing that it says to me is I think this sentence was awfully excessive under the circumstances, considering that he was only accountable. But I don't believe that. I mean from a prejudice point of view, the harmless error versus plain error. Do you think that the issue that he was not the shooter has anything to do with this? That maybe it's really harmless error. Well, the question becomes why did they go to the apartment? Were they there to commit an armed robbery? And on that, I don't know that the accountability would matter, but I certainly had not considered that question. Well, the reason I ask is some of the witnesses indicated that when your client came in the door, he was asking for money that was perhaps rightfully his, which could go to a positive for him. Yes, yes. So the question in my mind is did that positive testimony get overwhelmed by this confession that was unlawfully obtained? I don't believe so. You don't believe that it was overwhelmed? No. I don't believe that there's overwhelming evidence absent the fact that he said he couldn't say we went in for an accident, excluding that we went in for an accident. Then there's every possibility that they went there to get his clothes. That was one, to save purpose. And two, for him to receive the wages, if you will, that were due him for the work that he was doing. And I think you misunderstood my question. What I'm asking is, if you got the defendant who was going to say, I went for my clothes, I went for my own money, the fact that then a confession comes in, is that so prejudicial that it cannot be a harmful stand? Sure. Your Honor, I think that, I mean, of course, my answer is that is harmful. That is not a harmful stand. But my point would be, the case law says a confession is powerful. It's the most powerful piece of evidence, and it's rarely harmless error. And I believe that this case is not the case that is the rare exception to that rule. Are there any questions? Justice Walsh? Did, who said hit a, get a, hitting a lick? Was that the co- The co-defendant, DeMontrose? Or did he say, or was that in that statement? Demetrius Moore. I believe Demetrius Moore, one of the guys who drove down from East St. Louis that night, and he stayed in the car. He testified that Mr. Tucker had said they were going to hit a lick. He also testified that Mr. Tucker told him, and where the hit a lick was at page 829 of the record. He also said that Mr. Tucker wanted to go to the apartment to get his clothes. That's at 830 in the record. And that Mr. Tucker didn't say anything about getting his money at 830. Thank you. Are there any other questions now? Thank you. Thank you. You're busy. You're back this afternoon too. Oh, me too. And tomorrow. Not me. Well, but you've had the entire day today, and we all had the entire day yesterday. I didn't get to say this yesterday, since I had questions right off the bat. May I please record? My name is Sharon Shanahan, and I represent the people of the state of Illinois. I'd first like to address the question, Justice Cates, that you asked about accountability and whether the defendant may have been going there to get his own money. The state would argue that the admission of the interview is the only evidence that the defendant went there to get his own money. Because all three of the people that resided in that apartment said that the defendant said, where's the money, not where's my money. And it is only in the interview with the defendant that he says that he went to get his own money. So as far as that question arises, the admission of the interview actually was beneficial to the defendant's argument that there was no underlying felony. It was robbery, and if he didn't go there to get money, if he went there to get his money, then the argument could be made that there was no underlying felony. What I'm worried about is that those statements were made in the context of the unlawfully obtained confession. And so does the rest of the statement that was unlawfully obtained so overwhelm his effort at innocence that the jury wouldn't parse that out? Well, if you note in the state's brief, and I'll touch on it briefly here in oral argument, everything that the defendant said in that interview, somebody else said at the time. We have the fact that he, the defendant, Demetrius Torvell and Tommy drove from East St. Louis to Carbondale where Tommy obtained guns. Demetrius says the same thing. They drove to the Heron apartment where the defendant called Ms. Richardson who opened the door. Demetrius and Ms. Richardson also said the same thing. Torvell went into the apartment with the defendant, and they both had guns. Demetrius, Ms. Richardson, Mr. Malaya, and Ms. Woolfolk all said the same thing. The defendant went into the bedroom to get his clothes, and he came out whereupon he and Torvell displayed the guns. Ms. Richardson said the same thing. The defendant asked where the money was. Ms. Richardson, Mr. Malaya, and Ms. Woolfolk all said almost the same thing. They said, he said, where's the money? He said, where's my money? The defendant pointed an empty gun at Mr. Malaya and clicked the trigger. Ms. Richardson and Mr. Malaya both said the same thing. The defendant and Mr. Malaya wrestled. Ms. Richardson, Mr. Malaya, and Ms. Woolfolk all said the same thing. While they were wrestling, the gun went off. Mr. Richardson, Ms. Malaya, and Ms. Woolfolk all said the same thing. The defendant saw Mr. Davis laying on the floor, and he and Torvell ran out of the apartment. Ms. Richardson, Mr. Malaya, and Ms. Woolfolk all said the same thing. They got back in the car and drove back to East St. Louis. Demetrius said the same thing. They dropped off Torvell, who still had his gun. Demetrius said the same thing. The defendant threw his gun in some bushes in Centerville. Demetrius said the same thing. The next day, Taco shows up and wants his guns back, so the defendant retrieved his gun. Demetrius said the same thing. As I noted, parts of the interview actually helped the defendant. We discussed previously that he said that he went to get his money, not to steal, and since the underlying charge is armed robbery, that helped him. He also adamantly maintained that he never intended to hurt anyone and, in fact, took the bullets out of his car. I mean, out of his gun, excuse me. So, the State agrees that the standard is harmless beyond a reasonable doubt. I was a bit puzzled by the defendant's reply brief, in which it said that this Court used the wrong standard in Eagle v. Burnfield, but Burnfield, Berrigan, and Wright, three cases that the State cites to this court as establishing that, although the Supreme Court has said that it's rarely harmless there, it definitely didn't say it's always harmless there. Burnfield, Berrigan, and Wright all specifically state that the standard for determinification of error is whether the error in admitting the confession would have been harmless beyond a reasonable doubt. That's what... Just federal cases? Pardon me? Federal? I didn't cite any. I don't believe. What cases are those? Are those Illinois cases? Yes. Burnfield is a case that this Court decided. Berrigan and Wright are two other Illinois cases that are discussed in our brief. And they all found that the facts presented in those cases established that the admission of a confession was harmless beyond a reasonable doubt. So the defendant in the reply brief says that this Court used the wrong standard in Burnfield, but the precise language, if you look at Burnfield, says that you have to find it harmless beyond a reasonable doubt. That's what this Court says. That's what the State says in its brief. That's what the defendant says in his brief. That's what the State has established. This error was harmless beyond a reasonable doubt. And we would ask this Court to affirm. Are there any questions? I may be throwing a curveball at you, so if I am, just let me know. In the case of People v. Rice, which is the Illinois Supreme Court case in 2012, where they talked about physically coerced confessions, it can never be harmless error, it seems that our Illinois Supreme Court is unsettled as it relates to the U.S. Supreme Court case relied upon by the State of Pomenante. I'm not pretty much sure. I don't know either. Anyway, Pomenante was the one which decided that we could look at the harmless error doctrine. And the Illinois Supreme Court case of Rice, W-R-I-C-E, seems to indicate that they don't like that this is an unsettled kind of question, especially under Illinois law, as to whether such a constitutional violation can ever be harmless error. Having cited these three cases to us, do you think your three cases clarify the Illinois State Supreme Court's position on this? Do you think they're at odds, or have I truly thrown a curveball at you? A bit of a curve. I can't say I'm truly familiar with the Rice case. According to what you've said, Rice says that coerced confession can never be harmless error. Am I stating that correctly? I don't see... I do not see how... I mean, I think there's a tremendous... The full transcript of the interview is in the record. And there is certainly no coercion in this interview. And I think that coercive element that the Illinois Supreme Court has endowed is an extremely significant factor. Certainly, a coerced confession has not only the harm to the defendant, but the underlying actions of the police are so wrong that I think that adds an element that is totally missing from a confession which basically occurred just because a police officer said one more sentence than he should have said. And the discussion between the police officers from that point on is really quite... I don't know that we can ever say that these things are quite cordial, but still definitely absolutely no indication of coercion. Given the longstanding case law that establishes that an improperly admitted confession is rarely harmless error, I think when you move that one step beyond and say, well, it's coercive, then it's not a big jump to go from, it's rarely, and then it's coerced, it's always... I mean, it's never harmless error. Well, our court seems to make the distinction that this is the federal law and nobody's raised this issue under the Illinois state constitution as to whether an unlawfully obtained confession can ever be harmless error. So they seem to leave that point open. And certainly if either one of you want to look at this case and file something on it... 14 days? Yeah, 10 days or so. How many days would you need? 14? 10? 10. So let's clarify that. 10? 14, if you wish. 14 days, if you would like to, since I brought up a curveball, if you'd like to write something addressing the questions that I've raised, I'm going to give you 14 days. And 14 to reply. And 14 days to reply. Specifically, Your Honor, if I could clarify, are you asking us to address the application of Rice to this case? Yes. Or a broader question of... No, just to this case, because I didn't see it cited. And it's a 2012 case by Justice Tice. And so... As I say, my... There's a lot of discomfort with this harmless error. It seems like in the courts. Without reiterating what I say, I would just conclude that the difference between a coerced confession and a confession that was not in any way coerced... Because we're talking about a very final... I agree with you. We're going from rarely harmless error to never harmless error. And that's not a very good step. And the state admits that. I mean, we've got a big burden here to establish that this is harmless error. And this is not the case that I would say is... I would only... This is the rare case. And I would only mention to you that Justice Tice takes great pains to distinguish the Fulminante case and all of the opinions because it was a 5-4 decision and it was very contested and overruled. A lot of lying in cases in this regard. So take a look at it. I'm not limiting myself to coerce. I am interested in your thoughts on how it applies to this case, if at all. Yes, Your Honor. Okay? Thank you so much. Rebuttal? First of all, Your Honor, are we doing appellant, appellee, appellant reply brief, or just both? No, no, no. I just want one from each. Let the state go first and then you may reply. Thank you, Your Honor. I know that's a little unusual, but since I threw the curveball at her, Justice Welch told me not to. That's okay. Thank you, Your Honor. It does sound like a very interesting and very important question. Only this to me. I don't know about anybody else. No, it sounds very interesting and important to me, too. Really, I just want to say a couple of things here. First of all, it's been 40 years since I did labor for cash, but if I had done the work, and, you know, young men do that. If I had done the work and came to somebody's house and said, hey, I'm here for my money, hey, I want my money, hey, where's my money? That would not have meant that I wanted to rob somebody. So the fact that it may have been my money or the money, I don't think that matters. Did you go to their house with a gun? Pardon me? Did you go to their house with a gun is what I want to know. There goes one, Your Honor. And some of the things that I want to address here about how much was told to the jury about what was in this statement and how the defense could say that it was useful and everything like that. Well, there's one case you present if you win the motion to suppress, and then there's a case that you present if you lose the motion to suppress. We presented the case where we lost the motion to suppress. If we win the motion to suppress, and that's what I'm asking this court to do, to grant that motion, sooner than we grant it, then there's a different case we can present. So the fact that we relied on that statement, I don't think it holds any water. Thank you, Your Honor. Thank you. Okay, we'll take this matter under advisement. I'd like to share an opinion subsequent to hearing from you, if at all. If you don't decide to file anything, we would like to help you out. Thank you so much. See you this afternoon.